UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ENDOBIOGENICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ABI CHAHINE, <br><br> Defendant. | Case No. 4:19-CV-00096-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On July 3, 2019, Endobiogenics, Inc. filed a Motion for Default Judgment. Dkt. 11. On July 1, 2019, the Clerk issued an Entry of Default. Since that time, Abi Chahine has failed to appear and file a responsive pleading. Plaintiff renewed the motion for default judgment on August 30, 2019. Dkt. 14. For the following reasons, the Court will grant Plaintiff's first motion and vacate the second as moot.

## FACTUAL BACKGROUND

"Endobiogeny" is a healthcare approach whereby physicians use biological information about their patients' endocrine and autonomic nervous systems to provide holistic solutions to health problems. Dkt. 1 at 2-3. According to the Complaint, a French doctor, Jean-Claude Lapraz, co-created the practice of

**MEMORANDUM DECISION AND ORDER - 1**

endobiogeny in the 1970s and 1980s with another doctor, Christian Duraffourd. *Id.* at 2. In or around 1990, Dr. Lapraz began conducting training seminars on endobiogeny throughout the United States. *Id.* at 3. These seminars were made possible through the support of a Pocatello, Idaho pharmacist, Anne M. Buhler. *Id.*

From 2004 to 2007, Dr. Lapraz practiced herbal medicine in Pocatello. *Id.* In addition to his own practice, Dr. Lapraz created an online diagnostic tool to assist physicians "in diagnosing and prescribing care using the endobiogeny method." *Id.* at 4. Dr. Lapraz's "EMA System" analyzes the biological functions of a patient and returns a "Biology of Functions" report that diagnoses the patient –from an endobiogenic standpoint– and provides a recommended course of treatment. *Id.* According to the Complaint, the EMA System reports are printed onto "Endobiogenics"[1] letterhead "to identify the source of the information and to preserve the intellectual property of the data." *Id.*

Physicians who use the EMA System must enter into a written user agreement with Endobiogenics. *Id.* In November 2012, Abi Chahine[2] entered into a user agreement with Endobiogenics. *Id.* at 6. Among other things, the agreement

---

[1] Endobiogenics is an Idaho Corporation, with its principal place of business in Pocatello. Dkt. 1 at 1-2. Idaho corporation "Jumplion," which was formed by Dr. Lapraz in 2006, owns the United States patent to the EMA System. Dkt. 1 at 5; U.S. Patent No. 9,953,139.

[2] Abi Chahine is an individual, whose primary residence is in Brussels, Belgium. Dkt. 1 at 2.

**MEMORANDUM DECISION AND ORDER - 2**

requires physician users to pay fees. *Id.* at 5. The agreement also contains a provision stating that "if payment is not received by the 7th of the month the account will be cancelled on the 7th day of the month." *Id.* at 6.

According to the Complaint, Defendant stopped making monthly payments in July 2014. *Id.* Endobiogenics did not cut off Defendant's access to the EMA System, but did alert him that he needed to bring his account current. *Id.* In September 2015, Defendant paid all of his past due monthly balances, with the exception of payment for one month. *Id*. From that point forward to November 2017, Defendant paid his monthly bill, but never paid for the one month that was in arrears. *Id.*

In October 2015, Endobiogenics updated its user agreement. *Id.* Defendant never signed the updated user agreement. *Id.* Beginning in November 2017, Defendant again stopped paying his monthly user fees. *Id.* at 7. However, Defendant also continued to submit patient biology data to the EMA System for analysis. *Id.* Endobiogenics claims he submitted more patient biology profiles than were allowed by the user agreement. *Id.* Endobiogenics changed Defendant's system access level in November 2017. *Id.* By making the change, Endobiogenics halted Defendant's ability to submit new patient biological profiles. *Id.* However, Defendant retained the ability to download results of past biology profile analyses.

*Id.* In February 2018, Endobiogenics terminated Defendant's account access altogether.

According to Endobiogenics, Defendant "hacked" into the EMA System in February 2018 and continued to use it to produce full biological patient profiles until around May 2018—a duration of 3 or 4 months. *Id.* at 8. During that time, Endobiogenics alleges Defendant ran more than 600 sets of biological data through the EMA System. *Id.* Defendant allegedly obtained access by using the login credentials of another physician. *Id.*

Upon this discovery, Endobiogenics contacted the physician whose account had been compromised by Defendant's use. *Id.* Endobiogenics requested that the physician change the login credentials. *Id.* When the login credentials were changed, the data submissions ceased. *Id.*

Endobiogenics alleges further that Defendant did not obtain patient consent, as required by the EMA System user agreement, to submit patient biological data to the EMA System. *Id.* at 9. Additionally, Endobiogenics asserts that Defendant encouraged other physicians to use the system without authorization, that he spread false statements about Endobiogenics's systems and goods, and interfered with its business. *Id.*

These allegations include the fact that, in September 2017, Defendant sent an attorney-drafted letter to Endobiogenics asserting that Endobiogenics

terminated his subscription because he did not immediately sign the new user agreement.[3] *Id.* at 9-10. Defendant claimed the agreement contained "unacceptable clauses" and by terminating his subscription for his failure to sign the agreement, Endobiogenics put Defendant's patients at risk of harm. *Id.* In addition to sending the letter to Endobiogenics, Defendant also sent it to 60 or so other EMA System customers. *Id.* at 9. In response, Endobiogenics asserts it did not terminate Defendant's access because of his refusal to sign the new user agreement and thus Defendant knew the statements in September 2017 letter were false. *Id.*

In January 2019, Defendant filed a complaint against Dr. Lapraz with the Departmental Council of the City of Paris of the Order of Doctors (the Paris Board of Medicine). *Id.* at 10. The complaint makes allegations similar to those detailed in the September 2017 letter. Specifically, the complaint alleges that Endobiogenics abruptly cut Defendant's "access to EMA while [he] was in full payment...directly harming [his] professional practice, and denying [him] access to the medical data of most of [his] cancer patients without giving [him] the opportunity to retrieve this private data," and that doing so "put the health of [his]patients at risk." *Id.* at 10-11. Endobiogenics asserts the complaint was

---

[3] Notably, Endobiogenics asserts it did not terminate Defendant's access because of his refusal to sign the new user agreement. Additionally, Endobiogenics asserts it did not terminate Defendant's access to the EMA System until in or around February 2018.

**MEMORANDUM DECISION AND ORDER - 5**

retaliatory and that the serious criminal accusations are again based on facts Defendant knows to be false. *Id.*

Endobiogenics further claims that Defendant has engaged in unfair competition by forming the Belgian Institute of Endobiogeny— an endobiogeny educational institute that directly competes with similar programs offered by Endobiogenics for physician-users of its EMA System. *Id.* at 12. Endobiogenics asserts Defendant's institute spreads false information about Endobiogenics, and has attempted also to set up a system similar to the EMA System, and is providing courses on Dr. Lapraz's "Biology of Functions" without proper attribution. *Id.*

Based on these facts, Endobiogenics's Complaint asserts the following five claims against Defendant: breach of contract; breach of the implied covenant of good faith and fair dealing; defamation *per se*; intentional interference with prospective economic advantage; and violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030). *Id.* at 13-16.

## PROCEDURAL BACKGROUND

Endobiogenics filed its Complaint on March 22, 2019. Dkt. 1. The case was originally assigned to United States Magistrate Judge Ronald E. Bush. On July 3, 2019, Plaintiff filed a motion for default judgment. Dkt. 11. Because a motion for default judgment is dispositive, the case was reassigned to United States District Judge B. Lynn Winmill on July 29, 2019. Dkt. 13. *See Williams v. King*, 875 f3d

500 (9th Cir. 2017). On August 30, 2019, Plaintiff filed a renewed motion for default judgment. Dkt. 30.

As of the date of this Memorandum Decision and Order, Defendant Abi Chahine has yet to file notice of appearance. However, on May 28, 2019, Plaintiff filed notice with the Court that Defendant had been served at his residential address in Belgium on April 25, 2019. Dkt. 6. In early June, Plaintiff filed affidavits of service, proving service had been effectuated, and also filed a motion for Clerk's entry of default, which was granted on July 1, 2019. *See* Dkts. 7, 8, 9, and 10. Plaintiff renewed the motion on August 30, 2019. Dkt. 14. The Court considers the motion for default judgment below.

## LEGAL STANDARD

1. **Default Judgment**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment where default under Rule 55(a) has been previously entered based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

MEMORANDUM DECISION AND ORDER - 7

A defendant's default does not, however, automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986). The court "must still consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d 916, 920 (C.D. Cal. 2010) (citation omitted). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also Doe v. Qi*, 349 F.Supp.2d 1258, 1272 (N.D. Cal. 2004) ("[Although] the factual allegations of [the] complaint together with other competent evidence submitted by the moving party are normally taken as true ... this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief.")). Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Whether default judgment should be entered is within the discretion of the Court. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). In deciding whether to exercise its discretion to impose judgment by default, the Court is directed to consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive

claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471B72 (9th Cir. 1986) (citation omitted); *see also Landstar*, 725 F.Supp.2d at 920.

## ANALYSIS

Endobiogenics asks the Court to enter default judgment against Defendant Abi Chahine and in so doing to: (1) enjoin Chahine from further defaming Endobiogenics; (2) enjoin Chahine from introducing a computer program into the marketplace in violation of Endobiogenics's patents; (3) award damages; and (4) award costs and attorneys' fees. Dkt. 11-1 at 1.

Endobiogenics argues that the Court should enter default judgment because it has stated well-pleaded claims and that its recovery on those claims is essential to making it whole and to avoid continuing harm. Endobiogenics points also to the fact that Defendant acknowledged proper service, yet nevertheless, indicated he does not intend to appear before the Court or submit an answer "for months, if at all." Dkt. 11-1 at 4. The Court will consider these arguments and others provided by Endobiogenics in the context of the factors the Court must consider when

deciding whether to enter default judgment. As explained below, because the majority of factors favor entry of default judgment, the Court will grant the motion.

1. **Possible Prejudice to Endobiogenics**

As to the first factor, the possibility of prejudice to Endobiogenics, the Court finds the record supports the issuance of a default judgment. Without a judgment for damages, Endobiogenics will be unable to collect the user fees it alleges Defendant owes for both his authorized and unauthorized used of the SMA System. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). Further, without an order enjoining Defendant from engaging in unfair business activities, including defamatory statements, Endobiogenics will continue to suffer the economic and reputational impacts of Defendant's actions.

2. **Sufficiency of the Complaint and Merits of the Substantive Claims**

The second and third factors also favor entry of default judgment on behalf of Endobiogenics because the Complaint is sufficiently plead and includes potentially meritorious substantive claims. These factors focus on the potential merits of Endobiogenics's case and the sufficiency of its Complaint. *See PepsiCo* at 1176. As stated above, Endobiogenics asserts the following claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) defamation *per se*; (4) intentional interference with prospective economic

advantage; and (5) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030).

To prevail on its breach of contract claim, Endobiogenics must prove the existence of a contract, the breach of the contract, that the breach caused damages, and the amount of those damages. *Mosell Equities, LLC v. Berryhill & Co.*, 278, 297 P.3d 232, 241 (Idaho 2013). Relatedly, "[g]ood faith and fair dealing are implied obligations of every contract." *Luzar v. Western Surety*, 692 P.2d 337, 340 (Idaho 1984).

To prevail on its defamation *per se* claim, Endobiogenics must prove that a party communicated information about it to others, that the information was defamatory, and that Endobiogenics was damaged because of the communication. *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1132 (D. Idaho 2013) (citing *Clark v. The Spokesman–Review*, 144 Idaho 427, 163 P.3d 216 (2007)).

To prevail on its intentional interference with prospective economic advantage claim, Endobiogenics must prove "(1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself; and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Zoellner v. St. Luke's Reg'l Med. Ctr., Ltd.*, 937 F. Supp. 2d 1261, 1269-70 (D. Idaho 2013).

Finally, prevailing on a Computer Fraud and Abuse Act claim involves proving the key element of the statute, which is that access to a computer (or system) be "knowingly and with intent to defraud" —a *mens rea* element critical to finding that specific conduct violates the Act. *See United States v. Nosal*, 844 F.3d 1024, 1032 (9th Cir. 2016).

Endobiogenics's Complaint properly alleges the elements for the above causes of action. The Complaint sets forth the existence of the user agreement for the SMA System and details the provisions of the agreement that Endobiogenics believes were breached by Defendant. The Complaint sets forth a collection of derogatory and potentially defamatory statements that were made by defendant to third parties. The Complaint sets forth factual allegations showing Defendant has engaged in actions that may wrongfully interfere with SMA's business. Finally, the Complaint sets forth facts showing Defendant used false login credentials to access the SMA System. Accordingly, these facts and others show Endobiogenics has adequately pled its claims against Defendant.

3. **Amount at Stake**

The Court is without sufficient information regarding the sum of damages sought to determine whether the third factor favors entry of default judgment.

This factor requires the Court to balance the amount of money at interest with the seriousness of Defendant's conduct. *PepsiCo* at 1176; *see also Eitel*, 782

F.2d at 1471-72. In balancing these elements, the Court assesses "whether the recovery sought is proportional to the harm caused" by the Defendant. *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d at 916, 921 (C.D. Cal. 2010) (citation omitted). Here, Endobiogenics requests the Court order Defendant to pay damages and the attorneys' fees and costs it has incurred in bringing this action. However, no sum certain is requested—instead, Endobiogenics asks the Court to allow it to submit written evidence in support of an order for such costs and in support of an order enjoining defendant from engaging in certain actions.[4] Therefore, at this juncture, the Court has no idea of the amount of damages Endobiogenics believes it is entitled to receive as recompense for Defendant's actions.

### 4. The Possibility of a Dispute Concerning Material Facts

The fourth factor does not support entry of a default judgment because there is a possibility of disputes concerning material facts.

"Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo* 1177. In this case, Defendant has

---

[4] Upon entering default judgment under Rule 55(b)(2), the Court "may conduct hearings or make referrals...when, to enter or effectuate judgment, it needs to...determine the amount of damages." Fed. R. Civ. P. 55(b)(2). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).

taken no action nor made any attempt to challenge the accuracy of the allegations in Endobiogenics's complaint. However, this action does not appear to be a straightforward contract dispute. Instead, the record before the Court shows that Defendant had serious reservations about signing the revised user agreement. It shows also that Defendant leveled serious allegations against Dr. Lapraz and his companies' business practices. Although Endobiogenics provides information about the attorney-drafted letter and the Paris Medical Board complaint to support its defamation claim, that evidence shows that if Defendant did answer the complaint, he would likely dispute material facts related to many of Endobiogenics's claims.

Further, as an exhibit to the motion for entry of default judgment, Endobiogenics includes an email of May 15, 2019 from Defendant to counsel for Endobiogenics. Dkt. 11-3 at 2. In the email, Defendant points out that, according to his belief, many claims in the complaint are incorrect. *Id.* It is clear from this communication that if Defendant did answer the Complaint, he would dispute many of its factual allegations. For these reasons, this factor does not favor entry of default judgment.

5.  **Whether Default was Due to Excusable Neglect**

The fifth factor favors entry of default judgment. This factor "considers the possibility that the default resulted from excusable neglect." *PepsiCo, Inc. v.*

*California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant was properly served with the summons and complaint. He has also been served with the two motions for entry of default judgment. Additionally, although Defendant did not respond to the Complaint through a filing with the Court, he did contact Endobiogenics's counsel to object to the claims. Given Defendant's response, and his obvious interest in the matter, the "possibility of excusable neglect is remote." *PepsiCo* at 1177.

6.  **Policy Favoring Decision on the Merits**

The general rule or preference is that cases "be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F.Supp.2d at 1177 (citation omitted). "Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible." *Id.* Thus, Rule 55(a) allows the Court to "decide a case before the merits are heard if defendant fails to appear and defend." *Landstar*, 725 F.Supp.2d at 922. Because Defendant has failed to properly appear or respond to Endobiogenics's claims in this case, the general policy does not preclude the entry of default judgment against the Defendant.

## CONCLUSION

Entry of default judgment is warranted in this case. Endobiogenics has stated well-pleaded claims and seeks damages flowing from Defendant's conduct.

**MEMORANDUM DECISION AND ORDER - 15**

Without an order awarding damages and enjoining Defendant from engaging in unfair business activities, including making further defamatory statements, Endobiogenics will continue to suffer the economic and reputational impacts of Defendant's actions. However, because the Court does not have sufficient information before it to make a determination as to the amount of damages, it will order Endobiogenics to produce briefing and evidence in support of a particularized claim for damages. *See* Fed. R. Civ. P. 55(b)(2). It will also order Endobiogenics to submit briefing detailing the scope of its request for injunction.

## ORDER

**IT IS ORDERED that**

1) Plaintiff's Motion for Entry of Default Judgment (Dkt. 11) is **GRANTED**.

2) Plaintiff's Renewed Motion for Entry of Default Judgment (Dkt. 14) is **VACATED as MOOT**.

3) Plaintiff must file documents in support of a particularized claim for damages and detailing the scope of requested injunction on or before **October 28, 2019**.[5]

DATED: September 23, 2019

B. Lynn Winmill
U.S. District Court Judge

---

[5] Plaintiff's briefing must summarily address the enforceability of any award of damages or injunction issued from this Court on Defendant, a citizen and resident of Belgium.